UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


| | |
|---|---|
| **MICHELE ROHR,** | Case No. 6:15-cv-1716-YY |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**YOU, Magistrate Judge:**

Plaintiff, Michele Rohr ("Rohr"), seeks to reverse and remand the final decision of the Commissioner of Social Security[1] ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). In accordance with FRCP 73 and 28 U.S.C. § 636(c), all parties consented to allow a Magistrate Judge to enter final orders and judgment in this case (ECF #8). Because the Commissioner's decision is supported by substantial evidence and free from legal error, it is AFFIRMED.

---

[1] Although the pleadings give various names for the defendant, the official title and only proper named defendant is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1).

## ADMINISTRATIVE HISTORY

Rohr filed her application for DIB in April 2012, alleging a disability beginning December 21, 2006, due to physical and mental impairments, including stroke, loss of vision, leg weakness, tremors, PTSD, and fatigue. Tr. 151–54, 178.[2] After the Commissioner denied her application initially (Tr. 64–74) and upon reconsideration (Tr. 76–89), Rohr requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on January 29, 2014. Tr. 36. At the hearing, Rohr amended her alleged onset date to June 7, 2010, a date roughly corresponding with her treatment with Oregon Neurosurgery Specialists following an apparent stroke on May 31, 2010.[3] Tr. 40.

On March 6, 2014, the ALJ issued a decision finding Rohr not disabled. Tr. 29. The Appeals Council denied Rohr's subsequent request for review on July 7, 2015, and the ALJ's decision became the Commissioner's final decision subject to review by this court. Tr. 1–3; 20 C.F.R. §§ 404.981, 422.210.

## BACKGROUND

Born in July 1972, Rohr was 37 on her amended alleged onset date. Tr. 174. She speaks English and completed two years of college in 2001. Tr. 177, 179. She has past work experience as a certified medical assistant and as a certified nursing assistant. Tr. 179.

## ALJ'S FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[2] Citations are to the page(s) indicated in the official transcript of the record filed on February 22, 2016 (ECF #12).

[3] Following a trip to the emergency room on May 31, 2010 (Tr. 261–64), Rohr's first appointment with Oregon Neurosurgery Associates ("ONA") was on June 4, 2010. Tr. 265–67. She then had an MRI on June 9, 2010, and the results were faxed back to ONA on June 10, 2010. Tr. 307.

or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 404.1520.

At step one, the ALJ found that Rohr had not engaged in substantial gainful activity after her amended alleged onset date of June 7, 2010. Tr. 18. At step two, the ALJ found that Rohr has the following severe impairments: cervical degenerative disc disease, status-post stroke, migraine headaches, major depressive disorder, generalized anxiety disorder, panic disorder with agoraphobia, and right foot drop. *Id.* At step three, the ALJ found Rohr did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19.

The ALJ next assessed Rohr's RFC, and determined that she could perform a range of light work with the following limitations: she can walk or stand only four hours in an eight-hour day; she can occasionally balance and climb ladders and stairs; she cannot tolerate even moderate exposure to noise, or any hazards such as machinery and heights; she can perform simple routine tasks, but would be off-task five percent of the time; and she can tolerate occasional changes and perform goal-oriented work. Tr. 21.

At step four, the ALJ found Rohr could not perform any of her past relevant work. Tr. 28. At step five, the ALJ determined Rohr could perform jobs that exist in significant numbers in the national economy, including office helper and photocopy machine operator. Tr. 29. The ALJ therefore concluded Rohr is not disabled. *Id*.

///

///

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1205 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)); *Lingenfelter*, 504 F.3d at 1035.

## DISCUSSION

Rohr argues that the ALJ erred by rejecting her subjective symptom testimony and by improperly evaluating the medical evidence. Because Rohr's application is for DIB and not supplemental security income, she must establish disability on or before her date last insured—a date determined by her work history. *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1460–65, 1461 n.4 (9th Cir. 1995). In this case, the relevant time period for Rohr's DIB claim is between her amended alleged onset date, June 7, 2010 (Tr. 40), and her date last insured, March 31, 2011 (Tr. 82, 84).

///

///

I.  **Claimant Testimony**

   A. **Legal Standard**

The Ninth Circuit has developed a two-step process for evaluating the claimant's testimony about the severity and limiting effect of his or her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted). When doing so, the claimant "'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (*en banc*)).

The ALJ's assessment of a claimant's subjective symptoms may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount a claimant's subjective testimony "solely

because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted).

      B.  <u>Rohr's Testimony</u>

At the hearing, Rohr testified that, in June 2010, she began suffering from visual disturbances, a speech impairment, head pain, and an inability to move her right leg. Tr. 41. Oregon Neurosurgery Associates ran blood work and prescribed medications, and Rohr began physical therapy to help with her leg. *Id*. She was also fitted with a brace for her leg, but no longer uses that as it makes her feet go numb. Tr. 41–42. Her right leg continues to work only intermittently, putting her at risk for falls. Tr. 42. She also has a difficult time telling the difference between dark and light concrete, so she tends to walk slowly. *Id*. She is unable to look at computers, read, or text for more than five minutes without everything becoming blurry. Tr. 42–43. She has tremors in her hands and neck, which she thinks might be due to partial failure of an artificial disc she had placed in late 2003. Tr. 43, 280. Those tremors prevent her from using the computer, sewing, or doing any fine manipulations such as writing her name, using a computer mouse or sewing. Tr. 43.

Rohr takes lithium for anxiety and depression. Tr. 45. Rohr is unable to drive any significant distance due to anxiety, and is unable to go grocery shopping due to panic attacks. Tr. 46–47. Her husband left her in September 2013, leaving her with no means to pay for her counselor and no transportation to get to counseling appointments. Tr. 46. She has panic attacks, somewhat ameliorated by living in a calm area in the country. Tr. 46–47. She lives with her mom, step-dad, and older daughter, who do her grocery shopping and the household chores. Tr. 47–48. Her two elementary-school-aged children also live with them, and her mom and older daughter care for them and help them with their homework. Tr. 48.

### C. ALJ's Findings

The ALJ noted that Rohr testified to "significant and debilitating impairments during the period at issue with symptoms including visual hallucinations, speech impairment, head pain, and an inability to move her leg." Tr. 22. The ALJ gave several reasons for rejecting Rohr's testimony. One reason was that Rohr had "flatly refused" to comply with her treating neurologist's directive to quit smoking. Tr. 26. This does not pass muster as a convincing reason to discredit Rohr's statements about her impairments. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F3d 1219, 1227 (9th Cir. 2009) (cautioning that a claimant may be so addicted to cigarettes that he or she will continue to smoke "even in the face of debilitating [impairments]"). This leaves several other interrelated reasons given by the ALJ, namely the paucity of the medical record during the relevant time period and the lack of support in the available record during that time supporting the degree of limitation endorsed in Rohr's testimony. Tr. 22, 26.

The ALJ noted that Rohr failed to consistently seek treatment during the relevant period for her allegedly disabling symptoms and found that the "lack of records supports the finding that the claimant's impairments were not so debilitating as to warrant additional treatment." Tr. 26. The ALJ then gave a detailed summary of the medical evidence during the relevant period, pointing out the instances when Rohr claimed to have only minimal symptoms. Tr. 22–26. During the relevant period (June 7, 2010 through March 31, 2011), Rohr cancelled a referral to rehabilitation services and did not seek treatment from her neurologist between October 2010 and October 2011, despite allegations that she was suffering from disabling impairments. Tr. 25, 337, 347. Gaps in treatment and evidence of conservative treatment can be sufficient to discount a claimant's testimony regarding the severity of impairments. *Parra*, 481 F.3d at 750–51; *Burch*

*v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Accordingly, the ALJ's reliance on the gaps in treatment during the relevant period was not error.

The ALJ also found Rohr's claims unsupported by the available medical evidence that exists concerning the relevant period and inconsistent with Rohr's allegation of impairments significantly limiting her ability to perform basic work activities during the relevant period. Tr. 22. While the ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence," *Robbins*, 466 F.3d at 883, an ALJ may properly discredit a claimant's testimony based upon prior inconsistent statements concerning the symptoms. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (identifying a "range of factors" appropriately considered by the ALJ in assessing credibility).

The ALJ's narrative about the medical records during the relevant time period notes Rohr's report that she was free from symptoms of stroke and returned to a full level of activities by the end of June 2010. Tr. 24. On June 11, 2010, Rohr reported marked improvement in her symptoms to Mark Herring, M.D. Tr. 22, 318. While she reported limitations in lifting her right leg in June 2010, medical imaging and lab results from June 14, 2010, were unremarkable. Tr. 24, 657. Rohr reported complete resolution of her visual symptoms on June 21, 2010, and, despite complaints of difficulty walking, demonstrated a variable yet functional gait, with ability to rise on heels and toes and walk with tandem gait. Tr. 24, 329, 331. On July 6, 2010, Rohr reported complete resolution of all neurological symptoms as of June 24, 2010, and cancelled her referral for rehabilitation services. Tr. 24, 337, 339. A motor skills examination revealed normal strength, tone, and bulk throughout and intact coordination in all extremities. Tr. 339. Dr. Herring noted that Rohr's gait was entirely normal, including heel, toe, and tandem walk, and

that testing revealed full reflexes. *Id*. A few weeks later on July 22, 2010, Christian Stowell, M.D., also noted intact cranial nerves, negative pronator drift, negative Romberg test results, symmetrical upper and lower extremities, and full strength in all muscle groups—with the exception of some wrist extension weakness in Rohr's right hand. Tr. 447.

Rohr underwent implantation of a septal occluder device in her heart to close a septal defect on August 9, 2010. Tr. 365–66. Six and seven weeks later, she reported pleuritic chest pain but no other symptoms. Tr. 360, 364. A month later, on October 25, 2010, Rohr was seen in the emergency room reporting transient vision changes and dizziness reminiscent of symptoms when she previously had a stroke. Tr. 25, 626–37. She was advised to take a daily dose of aspirin and seek treatment if her symptoms returned.

On October 28, 2010, Rohr reported "episodes consistent with migraine headaches," including transient symptoms of vertigo and nausea. Tr. 25, 343–46. A complete neurologic examination revealed intact cranial nerves II–XII, with no lateralized sensory symptoms, no pronator drift, no tremor, and normal strength, tone, and bulk. Tr. 345. Coordination was intact, as were gait (heel, toe, and tandem), and reflexes were "in the 1 to 2+ range without consistent asymmetry." Tr. 346. Rohr was advised to continue taking daily aspirin, avoid dietary and environmental migraine triggers, and cease smoking. *Id*.

On January 17, 2011, Rohr presented for a physical examination that revealed largely benign findings. Tr. 25, 437. The next treatment records, and the last medical chart notes, in the record before Rohr's date last insured are from March 28, 2011. Tr. 437–38. Rohr had a crackling cough and some left chest pain that was "pleuritic and somewhat positional in character." Tr. 434. James Harrison, M.D., assessed an upper respiratory infection, chest wall pain that did "not seem to be cardiac or pulmonary," tobacco use disorder, and gastroesophageal

reflux. Tr. 435. The treatment notes from this visit were largely unremarkable and inconsistent with Rohr's allegations of disabling symptoms or limitations.

The ALJ's rejection of Rohr's testimony endorsing disabling visual disturbances, a speech impairment, head pain, and an inability to move her leg prior to her date last insured is supported by the record. The ALJ properly relied on gaps in treatment, statements concerning the resolution of symptoms that was inconsistent with her later testimony, and the lack of evidence indicating disabling symptoms prior to her date last insured in the available records to discount Rohr's later testimony. In sum, the ALJ's credibility finding is affirmed because she provided a legally sufficient reason for rejecting Rohr's statements, supported by substantial evidence in the record.

## II. Medical Evidence

Rohr also argues that she is entitled to remand because the ALJ failed to properly evaluate the medical evidence. In particular, Rohr contends that the ALJ improperly ignored evidence that was relevant to the time period in question while crediting retrospective opinions of state agency physicians. Rohr's application for supplemental security income benefits was apparently granted, effective July 8, 2014. Tr. 2. Despite the later finding of a disability, the ALJ assigned little weight to medical evidence obtained after expiration of Rohr's date last insured on March 31, 2011. Tr. 26. For example, the ALJ pointed out that the opinion of counselor Cindy Malouf, M.S., "would add nothing to the period at issue" because Ms. Malouf began seeing Rohr on August 8, 2012, which is outside of the relevant period. Tr. 26, 706–21. Rohr appears to concede this point in her briefing. Tr. 26; Plaintiff's Opening Brief, ECF #17, at 17.

Rohr, however, argues that evidence "technically outside the time period in question" supports "a continuing pattern of dysfunction and both heart and small stroke issues." Pl.'s Op. Brief, ECF #17, at 19 (citing Tr. 358, 359, 430, 433). Thus, Rohr challenges the ALJ's decision to credit opinions by reviewing state agency physicians, while disregarding retrospective opinions from examining physicians. Agency physicians who reviewed the record, include: (1) Jacqueline Farwell, M.D., who prepared a medical assessment regarding Rohr's RFC on June 18, 2012 (Tr. 67–69); (2) Bill Hennings, Ph.D., who prepared a psychiatric assessment on September 28, 2012 ( Tr. 69–70); (3) Martin Kehrli, M.D., who prepared a physical residual functional capacity assessment on February 28, 2013 (Tr. 84–86); and (4) Sandra Lundblad, Psy.D., who prepared a mental residual functional capacity assessment on March 3, 2013 (Tr. 86–87). The ALJ carefully reviewed the assessments of each of these medical sources, giving "great weight" to the opinions of Dr. Kehril and Dr. Lundblad, "significant weight" to Dr. Hennings's opinion, and "some weight" to Dr. Farwell's opinion. Tr. 26–28. In each instance, the reviewing provider specifically referenced that the review was for the date last insured (3/31/2011) (Tr. 84 (Dr. Kehrli), 86 (Dr. Lundblad), 69 (Dr. Hennings)), or cited evidence from the record both before and after the date last insured (Tr. 68–69 (Dr. Farwell, citing neurological records from late 2010 and late 2011)).

Rohr argues that it was error to rely on the retrospective opinions of these state agency physicians while disregarding the retrospective information provided by examining physicians. In particular, Rohr cites comments in an evaluation by Dainis Irbe, M.D., who performed a neurological evaluation of Rohr on April 24, 2012. Tr. 378–79. Dr. Irbe noted that Rohr's prior abdominal surgery and ischemic stroke caused "extreme stress and insomnia," and noted that Rohr had "developed nightmares, unpleasant dreams, and nocturnal awakenings related to

anxiety induced by these traumatic events." Tr. 380. Dr. Irbe drew a causal link between Rohr's prior stroke and cardiac surgery and the "nightmares, unpleasant dreams, and nocturnal awakenings related to anxiety induced by these traumatic events." Tr. 380. Although the evaluation suggests follow up in the form of an overnight sleep study, adjustment of Rohr's medications, and keeping a sleep log, it does not endorse any particular work-related functional limitations.

Rohr also cites the opinion of David Clark, D.O., who performed a neuro-ophthalmologic evaluation of Rohr on December 4, 2013. Tr. 818–24. In his evaluation, Dr. Clark noted that Rohr's stroke resulted in "[r]esidual . . . right-sided weakness and onset of chronic head pain," describing "occipital head pain traveling forward into her right eye with associated right-sided phonophobia and milder photophobia" that had "increased in frequency and intensity until now it occurs daily." Tr. 818. The ALJ gave this evidence little weight because it was rendered outside the relevant period. Tr. 26.

The difficulty here is twofold. First, Rohr does not point to any specific finding or limitation that the ALJ omitted from the RFC based on these two doctors' statements. Thus, Rohr does not allege any specific, harmful error committed by the ALJ in his evaluation of the medical evidence. The court will not reverse an ALJ's decision for errors that are inconsequential to the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Second, conflict with objective, relevant medical evidence constitutes a specific, legitimate reason for rejecting a physician's opinion. *Tommasetti*, 533 F.3d at 1040. In this instance, the same rationale that applies to the rejection of Rohr's testimony applies here; such as they exist, the medical records indicate that Rohr's symptoms were largely resolved or, as of her

date last insured, presented only transient limitations. While the record does indicate that Rohr's condition deteriorated such that the issues identified by Dr. Clark were a daily occurrence by late 2013, nothing in the record indicates that degree of symptomology as of March 31, 2011.

The ALJ credited the findings of treating doctors who examined Rohr during the relevant period and made findings that did not support her allegations of disabling limitations. *See, e.g.*, Tr. 318, 447. While the ALJ did not discuss the opinions of Drs. Clark and Irbe in detail in his written decision, his discussion of the medical record provided legally sufficient reasons for rejecting their opinions. *Id.*; Tr. 23–26. This court concludes that any error in failing to specifically mention the evaluations by Drs. Irbe and Clark was harmless. Because the ALJ's decision was rational and based on substantial evidence in the record, it is upheld. *Tommasetti*, 533 F.3d at 1038.

## **ORDER**

For the reasons discussed above, the Commissioner's decision that Rohr is not disabled is supported by substantial evidence and free of legal error. Accordingly, the Commissioner's decision is AFFIRMED.

DATED this 14th day of April, 2017.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge